UNITED STATES of America for the use of Morton ROSS, Hyman Gold, and Abe Rudnitsky, trading as Araco Co., and Araco Co., a corporation of the State of New Jersey, Plaintiffs,

v.

SOMERS CONSTRUCTION CO., Inc., a corporation of the State of Pennsylvania, and Reliance Insurance Company, a corporation of the State of Pennsylvania, Defendants.

Civ. A. No. 2086.

United States District Court
D. Delaware.

Oct. 1, 1959.

On Motion to Amend Complaint
May 3, 1960.

William Duffy, Jr., Herrmann & Duffy, Wilmington, Del., for plaintiffs.

Howard L. Williams, and Henry N. Herndon, Jr., Morris, James, Hitchens & Williams, Wilmington, Del., for defendants.

RODNEY, Senior District Judge.

On June 28, 1956 the United States and defendant Somers Construction Co., Inc., (hereinafter referred to as Somers) entered into a written contract whereby Somers agreed to construct ammunition storage facilities at the Dover Air Force Base, Dover, Delaware.

On the same day, Somers, as principal, and defendant Reliance Insurance Co., formerly known as Fire Association of Philadelphia as surety, gave a standard Government form of payment bond to the United States conditioned on the prompt payment of all persons supplying labor and material in the prosecution of the work provided for in the Government contract. This bond was in accordance with the requirements of the Miller Act, 40 U.S.C.A. § 270a.

On July 10, 1956 Somers entered into a subcontract with plaintiff Araco Company (hereinafter referred to as Araco) whereby Araco was to provide all plumbing, heating, ventilation, air conditioning and certain other work required to be done by Somers as part of its contract with the Government. This work was to be done "for the sum of $270,000.00."

After said subcontract was made, various additions to the work were ordered by Somers and performed by Araco to the extent of an additional $10,448.85, which, added to the $270,000.00, equalled the total of $280,448.85. Certain payments were made by Somers which reduced the total owed Araco to $93,251.23. These figures are taken from the complaint.

While the record is not entirely clear it is implicit from the language of the complaint and from the contentions of both parties that the Government at some period during the existence of its contract and pursuant to that contract issued a change order eliminating the work that Somers was to do under the original contract and Araco was to do under its subcontract with reference to ammunition magazine No. 2, being one of the magazines covered by the contract. The terminating provision of the contract as shown in the defendants' brief is set out in the footnote.[1]

As a consequence of the terminating order of the Government and the reduc-

---

1. "28a. The performance of work under this contract may be terminated by the Government in accordance with this clause in whole, or from time to time in part, whenever the contracting officer shall determine that such termination is in the best interest of the Government. Any such termination shall be effected by delivery to the contractor of a notice of termination specifying the extent to which performance of work under the contract is terminated and the date upon which such termination becomes effective. "28b. provides after receipt of a notice of termination and except as otherwise directed by the contracting officer, the contractor shall * * * terminate all orders and subcontracts to the extent that they relate to the performance of work terminated by the notice of termination * * *."

tion of the amount of work to be done by the contractor the Government reduced its contractual obligation to Somers by $52,355.58.

On March 13, 1959 Araco filed a Miller Act suit against Somers and its surety, Reliance, to recover the balance of moneys owed for labor and material furnished to a public construction project. Araco contends that since all the work eliminated by the United States was to have been performed by Araco, then Somers' obligation to Araco was reduced by the amount of the Government reduction. In short, Araco claims that Somers owes Araco $40,895.65. This amount is arrived at by deducting from the balance due if all the work had been done ($93,251.23) the amount of the allowance made to Somers by the Government ($52,355.58).

On April 23, 1959 defendants moved to dismiss the action because the Court had no jurisdiction over the subject matter, the action being between citizens of the same state, and presenting for determination no question under the Miller Act since Araco's action was not for labor and materials. Alternatively, defendants asked for a stay of proceedings pending arbitration between the parties pursuant to the United States Arbitration Act, 9 U.S.C. § 3 and, as contended, pursuant to the provisions of the subcontract.

█ It is first contended that the complaint must be dismissed because the Court has no jurisdiction. This is not a diversity case and there is no diversity of citizenship. Jurisdiction is solely alleged as conferred by the Miller Act[2] as to which no diversity is required.

The record is not clear at what time the Government eliminated the work on magazine No. 2 which Somers was to do under its contract and Araco was to do under its subcontract. The plaintiff seeks to recover because, as it contends, its subcontract was for one unit sum for all the work contemplated by the subcontract. The only statement of the plaintiff as to the time the Government eliminated the work proposed on magazine No. 2 appears in an affidavit that "many months after the work was begun the Government eliminated heating and air conditioning from one of the magazine buildings." The defendant contends that the contract for heating and air conditioning the two magazines was based upon $195,000.00 and as one magazine was eliminated it seeks to reduce the claim of the plaintiff by one-half or $97,500.00. It is thus implicit that the Government eliminated the work on magazine No. 2 before Araco started work on that magazine or furnished materials therefor.

Upon assumption of the above facts I must consider the application of the Miller Act. It will be borne in mind that I am not now considering any general contractual indebtedness of the defendants to the plaintiffs.[3] I am solely considering the application of the Miller Act and the liability of the bond furnished pursuant to that Act.

█ The Miller Act was passed for the purpose of securing payment to persons who furnished labor or materials entering into Government buildings or installations. The security provided by that Act is strongly analogous to that security obtainable by such persons as to privately owned buildings by mechanics' lien proceedings or other appropriate measures. As in mechanics' lien proceedings it is essential that the labor should have been performed or the materials furnished in connection with the particular structure involved.[4]

█ The Miller Act will be liberally construed in order to accomplish the pur-

---

2. 40 U.S.C.A. § 270a et seq.

3. The Government by the elimination of the work on magazine No. 2 only reduced its contractual obligation to Somers, the main contractor, by $52,355.58; Somers by the same elimination seeks to reduce

its obligation to Araco, the subcontractor, by $97,500.00.

4. See cases cited in United States for Use of Gibson v. Harman, 4 Cir., 192 F.2d 999, 1000.

poses of the Act [5] but the purview or intent of the Statute may not be unduly enlarged by the Court.[6]

The payment bond given pursuant to the Miller Act is solely conditioned to secure the prompt payment "to all persons supplying labor and materials in the prosecution of the work provided for in said contract."

A right of action on the bond is given by Sec. 270b of the Statute to "every person who has furnished labor or material" in the prosecution of the work and who has not been paid in full therefor. It is impossible for me to ascertain from the facts presented in this case what labor has been performed or material furnished for which payment has not been made. It is rather an ascertainment of a credit due for work not done and for materials not furnished owing to the Government's revision of the contract and elimination of magazine No. 2.

■ The right of action given under the Miller Act is a direct action on the bond for which the surety is liable but such claim is solely based upon the performance of labor or furnishing of material. The present claim as against the surety does not seem to flow from that source.

I am of the opinion that the present complaint must be dismissed as showing no claim upon which relief may be granted under the Miller Act. This conclusion is, I think, supported by United States for Use of Gibson v. Harman, 4 Cir., 192 F.2d 999 and L. P. Friestedt Co. v. United States Fireproofing Co., 10 Cir., 125 F.2d 1010, which hold that performance of work or furnishing of materials are essential to a recovery under the Miller Act.

■ The purpose and scope of the Miller Act is further evidenced by the recent amendment of August 4, 1959,[7] not applicable to the present litigation.

This amendment withdrew the "date of final settlement" as the date upon which the institution of suit should be based and substituted the "day on which the last of the labor was performed or material was supplied by him". Where no labor has been performed or material furnished, there could be no date from which the limitation would start to run. There being in this case no statement of any labor that had been performed or materials furnished for which payment had not been made, and no mention of any expense incurred or materials obtained for subsequent inclusion in the work deleted, the complaint must be dismissed when jurisdiction is solely based upon the Miller Act.

Having come to the conclusion that the complaint must be dismissed, consideration will not be given to the alternative motion concerning arbitration.

An appropriate order may be submitted.

### On Motion to Amend Complaint

This is a ruling upon a motion to amend a complaint dated March 13, 1959 which purportedly set forth a cause of action under the Miller Act, 40 U.S.C.A. § 270b. The plaintiffs did not explicitly state what labor had been performed and materials supplied for which they had not been paid. Consequently on October 1, 1959 an opinion was filed indicating relief could not be granted on that complaint under the Miller Act. Thereafter on October 6, 1959, plaintiffs submitted a motion to amend the complaint and an attached amendment specifying what labor had been performed and materials supplied for which they had not been paid.

■ Defendants contend that leave to amend should be denied on the following grounds:

(1) The plaintiffs have not established any right to make such an amend-

5. United States for Benefit and on Behalf of Sherman v. Carter, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776.

6. United States for Use of Gibson v. Harman, 4 Cir., 192 F.2d 999, L. P. Friestedt Co. v. United States Fireproofing Co., 10 Cir, 125 F.2d 1010, under the predecessor act.

7. 73 Stat. 279.

ment, and to allow it would result in extreme prejudice to defendants.

(2) The statute of limitations is a bar to the amendment.

In answer to the first contention, the defendants themselves admit that leave to amend lies in the broad discretion of the Court. However, the defendants apparently construe the purpose of an amended pleading

"to include matters occurring before the filing of the original pleading which have been overlooked or not known at the time the original pleading was filed." [1]

I think this is placing too narrow a construction upon the purpose of an amended pleading. Rule 15(a) F.R.Civ. P., 28 U.S.C.A., says:

" * * * leave shall be freely given when justice so requires" and this Rule has been given a broad and liberal interpretation.

"Allowing amendments is incidental to the exercise of all judicial power, and is indispensable to the ends of justice." Tilton v. Cofield, 93 U.S. 163, 166, 23 L.Ed. 858.

"Recognizing that the entire spirit of the rules is to the effect that controversy shall be decided on the merits, the courts have not been hesitant to allow amendments for the purpose of presenting the real issues of the case, where the party has not been guilty of bad faith, is not acting for purposes of delay, the opposing party will not be unduly prejudiced or the trial of the issues unduly delayed." 3 Moore's Fed. Prac. (2nd Ed.) Para. 15.08.

I do not think the defendants can be prejudiced by the amendment. As the Court appropriately stated in Scott v. Baltimore & O. R. Co., 3 Cir., 1945, 151 F.2d 61, 64:

" * * * The only injustice to the defendant in such a situation is when he is compelled to go on with the trial and meet a new point which is a surprise to him and on which he has had no opportunity to prepare."

The defendants' second contention is that an amendment which attempts to set forth a new cause of action based upon "new facts" or a "new legal basis", does not relate back to the date of the original complaint and is, therefore, barred by the statute of limitations.

The case which defendants cite, Hartmann v. Time, Inc., D.C., 64 F.Supp. 671, 680, does not say "new facts" but rather "that an amendment stating a new cause of action * * * may not be permitted." It is generally understood that an amendment containing a new cause of action will not relate back.

Nor does the plaintiffs' amendment state a "new legal basis." It is merely a reiteration of a claim arising under the Miller Act. As the Hartmann case says later in the same paragraph,

"The relation back provided for in Rule 15(c) applies, as it is clearly stated therein, only when the asserted claim or defense arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading."

Since a claim under the Miller Act was, at least, attempted to be set forth in the original complaint, then this amendment is not stating a new cause of action. The complaint gave the defendants fair warning that suit was being brought against them under the Miller Act, and the amendment does nothing more than particularize the general allegations set forth in the complaint.

In a similar circumstance, the court said in Tiller v. Atlantic Coast Line, 323 U.S. 574, 581, 65 S.Ct. 421, 424, 89 L. Ed. 465:

"There is no reason to apply a statute of limitations when, as here,

---

1. Page 3 of Defendants' Brief filed October 19, 1959.

the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it. * * *"

This Court, acting within the broad and liberal area of the judicial discretion conferred upon it, will grant the plaintiffs leave to amend their complaint. In so doing, the Court deems it unnecessary to consider the plaintiffs' suggestion that the amendment might be filed of right.